# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

NANCY GERDTS individually and
for minor A.G., CINDY SLAVENS
individually and for minor J.S., and
ALAN and LAURISSA CHILSON,
on behalf of themselves and all others
similarly situated,

       Plaintiffs,

v.                                  **MEMORANDUM OF LAW & ORDER**
                                      Civil File No. 04-3500 (MJD/SRN)

SMITHKLINE BEECHAM
CORPORATION d/b/a/
GlaxoSmithKline and
GLAXOSMITHKLINE PLC,

       Defendants.
_____

Andrew L. Davick, Anthony J. Nemo, and Paul R. Dahlberg, Meshbesher & Spence, Ltd., Counsel for Plaintiffs.

Jan R. McLean Bernier, Amanda M. Cialkowski, Dana M. Lenahan, Tracy J. Van Steenburghm and Scott A. Smith, Halleland Lewis Nilan & Johnson PA, and Chad A. Peterson, Dwight J. Davis, Meghan H. Magruder, and Stephen B. Devereaux, King & Spalding LLP, Counsel for Defendants.
_____

1

## I.   INTRODUCTION

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment [Docket No. 71].  The Court heard oral argument on November 2, 2007.

## II.   BACKGROUND

On August 2, 2004, Plaintiff Nancy Gerdts, individually and on behalf of minor A.G., filed a putative class action complaint against Defendant SmithKline Beecham Corporation doing business as GlaxoSmithKline and GlaxoSmithKline plc (collectively "GSK") regarding sales of Paxil for use by minors.  On September 22, 2004, Gerdts, individually and for minor A.G.; Plaintiff Cindy Slavens, individually and for minor J.S.; and Plaintiffs Alan and Laurissa Chilson filed an Amended Class Action Complaint on behalf of themselves and all others similarly situated against GSK.

The lawsuit involves the prescription drug paroxetine, sold under the trade name Paxil® and Paxil CR  ("Paxil") and marketed by GSK.  Plaintiffs, residents of Minnesota and Ohio, seek to represent "a class of individuals consisting of all persons who purchased the drug Paxil ("paroxetine") for the treatment of depression in patients under the age of 18 years . . . after November 19, 1998."

(Am. Compl. ¶ 1.)  The basis of Plaintiffs' claims is that GSK misrepresented information concerning the safety and efficacy of Paxil for treating pediatric depression.  (Id. ¶ 2.)  Plaintiffs allege fraud, misrepresentation, breach of express and implied warranties, and refund or restitution.

Plaintiffs seek the following remedies: "[r]efund and reimbursement of all monies for purchase of Paxil or Paxil CR and disgorgement of all profits acquired by means of the above practices and through the sales of Paxil® or Paxil CR to plaintiffs and members of the proposed Class," interest, costs, and attorney fees.  (Id. at 26.)

On October 6, 2006, a circuit court in Madison County, Illinois granted preliminary approval of a nationwide class settlement in the case Hoormann v. SmithKline Beecham Corp., Case No. 04-L-715.  The Hoormann class was a nationwide class of "[a]ll persons in the United States who purchased for their minor child or ward Paxil® or Paxil CR™ prescribed for consumption by that child or ward."  (Hoormann Order Preliminarily Approving Settlement at 2.)  The present action was stayed pending the resolution of the Hoormann case.  [Docket No. 66]

On May 17, 2007, the Illinois court issued its final judgment approving the

3

settlement between GSK and the nationwide <u>Hoormann</u> class.  (<u>Hoormann</u> Final Order at 9-11.)

Pursuant to the settlement agreement, GSK must pay the out-of-pocket costs that individuals incurred for Paxil prescribed for consumption by their minor children.  (<u>Hoormann</u> Settlement Agr. ¶¶ 7-8.)

The Settlement Agreement provides:

> Class members who have not timely exercised their right to opt out as provided in the Court-approved notice shall look solely to the Settlement Fund for settlement and satisfaction of all Released claims, as defined in paragraph hereof.

(<u>Id.</u> ¶ 10(a).)

The Settlement Agreement further provides that

> Plaintiffs, on behalf of themselves and all Class members . . . release GSK . . . (collectively, the "Released Parties) from all claims that Plaintiffs and Class members asserted or could have asserted in the Action arising out of or relating to economic damages suffered as a result of their purchase of Paxil® or Paxil CR™ for ingestion by someone under the age of 18 including without limitation any claim for attorneys' fees or expenses of any type ("Released Claims").

(Settlement Agr. ¶ 13.)  Additionally, Plaintiffs and Class members

> covenant not to sue the Released Parties based on any Released Claims; provided, however, that this Release and covenant not to sue shall not bar a subrogation claim brought on behalf of an individual Class member by an insurer, benefit plan, third-party payor or other

4

collateral source (collectively, "Subrogees") if the Class member as subrogor has a contractual duty not to release such subrogation claim, and if, in addition, subject to restrictions (if any) of any applicable law, (1) the Subrogee requires in a writing addressed to the individual Class member that a subrogation claim be brought on behalf of that specifically identified Class member, and (2) the Subrogee brings such subrogation action in its own name.  GSK explicitly reserves any and all defenses to such action, including without limitation settlement and release for any out-of-pocket payments by Class members, and explicitly denies that any Subrogees have a valid claim.

(Id.)

The Hoormann Final Order provides that GSK is

hereby released from all claims that Plaintiffs and class members asserted or could have asserted in this case arising out of or relating to economic damages suffered as a result of their purchase of Paxil® or Paxil CR™ for ingestion by someone under the age of 18 ("Released Claims"), subject to the preservation of all claims of personal injury which might or could have been sustained by the ingestion of Paxil® or Paxil CR™.

   (c)  Members of the class are permanently enjoined from filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, or other proceeding based on, relating to, or arising out of the Released Claims in this case.

   (d)  This Release and covenant not to sue shall not bar a subrogation claim brought on behalf of an individual Class member by an insurer, benefit plan, third-party payor or other collateral source (collectively, "Subrogees") if the Class member as subrogor has a contractual duty not to release such subrogation claim and if,

5

> in addition, subject to restrictions (if any) of any applicable law, (1) the Subrogee requires in a writing addressed to the individual Class member that a subrogation claim be brought on behalf of that specifically identified Class member, and (2) the Subrogee brings such subrogation action in its own name.

(Final Order at 9-10.) The Order lists 17 families of Class members who timely exercised their right to opt out of the settlement. (Order, Ex. A.) Plaintiffs Gerdts and Slavens in this case are among those who opted out of the Hoormann settlement.

Defendants have now filed the present motion for partial summary judgment, requesting that the Court dismiss Plaintiffs' class claims on the grounds that they are barred by the final judgment in the Hoormann case.

## III.   DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. Summary judgment is only appropriate

when "there is no dispute of fact and where there exists only one conclusion."

Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

    **B.**    **Res Judicata**

GSK argues that all the claims of Plaintiffs' putative class were released in the Hoormann settlement and are, thus, barred by the final judgment in that case. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Under Illinois law, "the doctrine of res judicata provides that a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. . . . The doctrine of res judicata applies not only to what actually was decided in the original action but also to matters which could have been decided in that suit." Wiencek v. Woodfield Ford Sales, Inc., 597 N.E.2d 744, 746 (Ill. Ct. App. 1992) (citations omitted). When a party was a member of a certified class in a previous lawsuit against the same defendant, the parties in both actions are identical. Id. Thus, the members of the purported

class in this case who purchased Paxil for their minor child or ward and did not opt out of the Hoormann class are subject to res judicata. The same action requirement is met because it is undisputed that the Hoormann lawsuit and this lawsuit involve "the same set of operative facts" and "substantively identical allegations," and the same evidence would be "needed to advance both actions." Id. at 747. Additionally, there has been a final judgment on the merits in the Hoormann case. Thus, the only issue before the Court regarding res judicata is whether the claims at issue here were decided or could have been decided in the Hoormann lawsuit.

In determining whether a class action settlement bars subsequent claims or actions by class members who did not opt out, the Court looks to the terms of the final judgment, including the language of the related settlement agreement. In re Gen. Am. Life Ins. Co. Sales Practices Litig., 357 F.3d 800, 803 (8th Cir. 2004). If the final judgment's terms clearly encompass the claims in question, those claims are barred by principles of res judicata. Id. The settlement and final judgment bars "all claims" encompassed therein, including "those which an individual class member may have had, but knowingly chose to relinquish by remaining a member of the class." Thompson v. Edward D. Jones & Co., 992 F.2d 187, 190-91

(8th Cir. 1993) (citation omitted).

>   C.  **Whether Individual Purchasers Can Maintain Claims for Third-Party Payments**

GSK asserts that it is entitled to summary judgment on Plaintiffs' class action allegations because the alleged class consists of the members of the Hoormann class and the claims asserted in this case are barred by the final judgment in the Hoormann case.  Plaintiffs admit that their proposed class includes persons who were members of the settlement class in Hoormann, persons who purchased Paxil for use by their minor children or wards.  Plaintiffs argue that, while parents bound by the Hoormann settlement cannot seek recovery for their actual out-of-pocket expenditures, they can still seek to recover the portion of the drug price paid by third-party payors on behalf of the covered person or other economic damages, such as provider reductions or third-party payments written off or compromised during the pendency of the claim because these claims were neither contemplated by nor released in the Hoormann settlement.

Plaintiffs assert where an individual seeks full recovery and a portion of that recovery is for the benefit of a derivative insurer subrogor, the entire

9

recovery can be sought in the name of the subrogor alone.  Braniff Airways, Inc. v. Falkingham, 20 F.R.D. 141, 144 (D. Minn. 1957) ("[W]hen the insured brings suit alone, to recover for the whole loss, the controversy can be adjudicated completely and finally without the joinder of the insurer subrogees, and the defendant will have only one lawsuit to defend.").  Braniff is does not aid Plaintiffs' argument.  Rather, it supports the conclusion that the Hoormann class members had a right to seek full recovery, including amounts possibly due to their third-party payors.  Because they could have asserted those claims, they also possessed the right to release their right to assert those claims in the Hoormann Settlement.

    The case before this Court is governed by the Settlement Agreement and Final Order in Hoormann.  The Hoormann Final Order "permanently enjoined [class members] from filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit . . . based on, relating to, or arising out of the Released Claims in this case," and defined "Released Claims" to be "all claims that Plaintiffs and class members asserted or could have asserted in this case arising out of or relating to economic damages suffered as a result of their purchase of Paxil® or Paxil CR™ for

ingestion by someone under the age of 18." (Final Order at 9-10; see also Settlement Agreement ¶ 13 (providing almost identical definition of Released Claims). ) This injunction and release did not limit itself to claims for out-of-pocket expenses. The Final Order and Settlement Agreement unambiguously bar "all claims" relating to economic damages. This clear meaning is reinforced by the fact that the Final Order explicitly acknowledges that third-party payors can still bring a subrogation claim, but must bring such a claim in their "own name." If the Final Settlement and Final Order only applied to claims for out-of-pocket expenses, there would be no need to address subrogees' right to bring subrogation claims in their own names.

The Final Order and Settlement Agreement both provide that the release applies to claims that the class members "*asserted or could have asserted* in the [case or Action] arising out of or relating to economic damages suffered as a result of their purchase of Paxil® or Paxil CR™ for ingestion by someone under the age of 18." (Id. (emphasis added)). As Plaintiffs themselves assert, individual class members could have brought claims for provider reductions, written-off payments, or amounts paid by third-party payors. Thus, claims to reimburse the third-party payors, write-offs, and provider reductions are

11

precisely the type of claims that the Hoormann class members *could have asserted* in that case relating to the economic damages suffered as a result of the purchase of Paxil for pediatric use.

The Court holds that the Hoormann settlement bars all Hoormann class members from asserting claims against GSK for money paid by third-party payors as reimbursement for purchases of Paxil, provider reductions, or any other such economic claims the Hoormann class members could have asserted against GSK. See Thompson v. Edward D. Jones & Co., 992 F.2d 187, 192 (8th Cir. 1993) ("As a class member who chose not to opt out after notice of the terms of the settlement, appellant is bound by the Order and Final Judgment . . . and must abide by its express terms.").

### D. Whether Plaintiffs Have Included Third-Party Payors in Their Proposed Class

Third-party payors were not included in the Hoormann class. Accordingly, Plaintiffs contend that third-party claims survive the Hoormann settlement. Plaintiffs assert that, even if the Hoormann class members are barred from seeking reimbursement from GSK for money paid by third-party payors for purchases of Paxil, the third-party payors themselves can seek such

reimbursement. Plaintiffs further assert that third-party payors are included in their proposed class. Therefore, the Court must analyze whether these third-party payors are members of Plaintiffs' proposed class in this action such that Plaintiffs' class allegations survive.

Plaintiffs note that, in Paragraph 14 of their Amended Complaint, they define the class as "all persons who purchased the drug paroxetine (Paxil® and Paxil CR) from GSK for the treatment of pediatric depression after November 19, 1998." (Am. Compl. ¶ 14.) They assert that this definition includes third-party payors because one definition of the term "person" includes "[a]n entity (such as a corporation) that is recognized by law as having the rights and duties of a human being." Black's Law Dictionary (8th ed. 2004). (Another legal definition is "[a] human being." Id.)

An accepted definition of "person" can include an entity such as a corporation, and, therefore, a third-party payor. Based solely on the class allegation in Paragraph 14, it is possible that Plaintiffs' proposed class includes third-party payors; however, the analysis does not end there. See, e.g., United States v. Jimenez, 507 F.3d 13, 19 (1st Cir. 2007) ("Indeed, the word's meaning largely depends on context – person as distinguished from animal, person as

13

distinguished from mind or soul, person as distinguished from corpse. Some legal definitions of person include corporations and similar business entities. . . . . The word 'person' in isolation admits of more than one meaning.") (citation omitted). Plaintiffs also define the proposed class to consist entirely of "individuals:"

> Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and as representatives of a class of individuals consisting of all persons who purchased the drug Paxil ("paroxetine") for the treatment of depression in patients under the age of 18 years (hereinafter "pediatric depression") after November 19, 1998.

(Am. Compl. ¶ 1.) Plaintiffs allege that the "Class includes thousands of individuals and, therefore, the members of the Class are so numerous that joinder is impracticable." (Id. ¶ 16.) They assert that "Defendants intended that individuals would rely on these material misrepresentations to the economic benefit of GSK." (Id. ¶ 99.) While the definition of "individual" can also be synonymous with the term "person," as the Supreme Court noted when interpreting a statute, Clinton v. City of New York, 524 U.S. 417, 428 n.13 (1998), "[i]n common usage, 'individual' describes a natural person." In re North (Gadd Fee Application), 12 F.3d 252, 254-55 (D.C. Cir. 1994). In this case, in context, it is

apparent that "individual" refers to a human being.

In their interrogatory answers, Plaintiffs averred that they sought to represent a class composed of "[a]ll individuals who were prescribed Paxil for the treatment of pediatric depression from November 19, 1998 to present." (Pls.' Answers to Defs.' First Set of Interrogs. at 9.) The only "individuals who were prescribed Paxil," were individual human beings. No third-party payor was prescribed Paxil. Moreover, when GSK asked Plaintiffs to identify "each and every person" known to be a member of the proposed class, Plaintiffs identified three human beings – Cindy Slavens, Alan Chilson and Laurissa Chilson – but not one entity or third-party payor. (Id. at 11.) Plaintiffs failed to identify any entity despite the fact that Plaintiffs were aware of insurers or third-party payors who had paid a portion of the cost of Paxil on their behalf. (See, e.g., id. at 8 (noting that the damages Gerdts requested included "$560.00 paid by her health care insurance company").

The Court concludes that Plaintiffs' proposed class was limited to human beings and did not include non-human entities such as insurers or third-party payors. Plaintiffs' responses to interrogatories makes clear that they do not seek to represent third-party payors because 1) third-party payors were not

"prescribed" any drug; and 2) when asked, Plaintiffs did not identify any third-party payors as potential class members, despite the fact that Plaintiffs' other interrogatory answers unequivocally demonstrate that they were aware of, at a minimum, the third-party payors who paid portions of their own drug prescriptions.

Because Plaintiffs' proposed class does not include entities such as third-party payors and because members of the Hoormann class are barred from asserting the claims set forth in Plaintiffs' Amended Complaint, GSK's motion for partial summary judgment is granted.

**IT IS HEREBY ORDERED** that:

Defendants' Motion for Partial Summary Judgment [Docket No. 71] is **GRANTED** and Plaintiffs' class claims are **DISMISSED**.


Dated: January 22, 2008                s / Michael J. Davis
                                       Judge Michael J. Davis
                                       United States District Court